H8U3KETC

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4           v.                          17 CR 243 (SHS)

5   ARASH KETABCHI,

6               Defendant.

7   ------------------------------x

8                                   New York, N.Y.
                                    August 30, 2017
9                                   3:00 p.m.

10

    Before:
11
                    HON. SIDNEY H. STEIN,
12
                                        District Judge
13

14                        APPEARANCES

15  JOON H. KIM
         Acting United States Attorney for the
16       Southern District of New York
    KIERSTEN A. FLETCHER
17       Assistant United States Attorney

18  JAMES R. FROCCARO, JR.
         Outgoing Attorney for Defendant
19
    GARY BECKER
20       Incoming Attorney for Defendant

21

22

23

24

25

H8U3KETC

1          THE DEPUTY CLERK:  United States v. Arash Ketabchi.

2     Counsel, please state your names for the record.

3          MS. FLETCHER:  Good afternoon, your Honor.  Kiersten

4     Fletcher for the government.

5          MR. FROCCARO:  Good afternoon.  James Froccaro for

6     defendant.

7          THE COURT:  Good afternoon.

8          MR. BECKER:  Good afternoon.  Gary Becker.  The Court

9     asked me to be here.  My CJA duty day was Friday.  My

10    understanding is there are conflicts with the lawyers whose

11    duty days are today and tomorrow, so I'm happy to be here.

12         THE COURT:  Good afternoon to all of you, and

13    Mr. Ketabchi is present as well.

14         Yes, I have a letter from Mr. Froccaro, which has been

15    filed as ECF Document 67, in which he says that Mr. Ketabchi

16    had recently notified Mr. Froccaro that Mr. Ketabchi's

17    financially unable to proceed with private counsel.  And he's

18    only been paid a fraction of the modest retainer he was

19    promised, and Mr. Ketabchi has indicated he will not have the

20    balance of the retainer.  And there has been a breakdown in the

21    attorney-client relationship, necessitating this application.

22         Mr. Froccaro, has your client filled out a CJA 23

23    form?

24         MR. FROCCARO:  He has, your Honor.

25         THE COURT:  Pass it up, please.

H8U3KETC

1          MR. FROCCARO:  Mr. Becker has it, your Honor.  He's

2     going to hand it up.

3          THE COURT:  Thank you.

4          Mr. Ketabchi, I have this CJA form 23.  Did you fill

5     it out, sir?

6          THE DEFENDANT:  Yes, yes, your Honor.

7          THE COURT:  Is that your signature?

8          THE DEFENDANT:  Yes, your Honor.

9          THE COURT:  Let me ask a few questions.  It says if

10    married, is your spouse employed, and nothing is filled out.  I

11    take it you are not married.  Is that correct?

12         THE DEFENDANT:  I'm not married.

13         THE COURT:  Under "other income" you have 3,000

14    employment, 2,000 Uber, and then you say "estimate."  And then

15    it says $20,000 estimated.  What does that mean?

16         THE DEFENDANT:  In March, when we got the homes raided

17    and they took all my bank statements and they closed all my

18    bank accounts.  At that time, prior to that, for the six months

19    I estimate that may be from the business there was 20,000 or so

20    income.  And I don't have access to any of that stuff, so I'm

21    not sure exactly what it was.  And prior to that, I never filed

22    my tax returns for this year.  For -- 2016.  I just -- 2017.

23    So I don't know what my income was.

24         THE COURT:  The question asked within the past 12

25    months, so are you saying you're estimating your income total

H8U3KETC

1    income from August of 2016 to August of 2017 is about $20,000?

2                THE DEFENDANT:  It could be more, but again, I don't

3    have access to it, and haven't file my taxes, so I'm not

4    positive.  But in these past six months is where, you know, the

5    important part is moving forward, I don't -- I can't get any

6    sort of job.  Everywhere I go, Google is a very dangerous

7    device, and everybody, I work three weeks, a month, and then

8    they come back and they tell me, hey, you know, we can't employ

9    you anymore.  Wire fraud, money laundering case.  Or they do a

10   background check.

11               Uber closed my account because of a background check.

12   I can't even drive Uber.  I was working with my father in the

13   family business, and he can't afford to keep me anymore and

14   some conflict of relationship stuff.

15               THE COURT:  Is that the 3,000 for employment, is that

16   when you were working for your father?

17               THE DEFENDANT:  Correct.  500 a week, yup.

18               THE COURT:  Uber is when you were a driver for Uber?

19               THE DEFENDANT:  I was.  I wish I could drive now, I

20   wish I could get employment.

21               THE COURT:  Then it says do you own any real estate,

22   stocks, bonds, notes, or any other valuable property, and you

23   checked yes.  And what you list is a home with a value of

24   700,000, but you also list AmeriHome as indebtedness of

25   $560,000.

H8U3KETC

1          I don't want to put words in your mouth, but I gather

2     from what you say here that you believe the value of the home

3     you own is $700,000, but you have a $560,000 mortgage against

4     the equity.  Is that what this indicates?

5          THE DEFENDANT:  I believe yes.  If I'm -- if I wrote

6     that by accident, may have been 650,000 I owe, not 560.  I

7     might have transposed it there.  But I didn't pay last month's

8     mortgage payment.  I'm behind on last month's mortgage.

9          THE COURT:  Let me ask it this way.  Do you have a

10    mortgage on your home?

11         THE DEFENDANT:  I do, sir.

12         THE COURT:  What is the mortgage?  How much is

13    outstanding on the mortgage?

14         THE DEFENDANT:  I believe it's 650.  I could call

15    AmeriHome and ask them.

16         THE COURT:  If that's your good-faith estimate, that's

17    all right.  You have to change this affidavit then, because it

18    says 560.

19         THE DEFENDANT:  Would you like me to get the exact

20    before I do that?

21         THE COURT:  I don't need it.

22         THE DEFENDANT:  And your Honor, on that equity on the

23    home, the courts have put $100,000 cash bond on the home.  And

24    I have a $100,020 lien on the home from a loan, a business loan

25    I had gotten that I couldn't repay.

H8U3KETC

<table>
<tr><td>1</td><td>THE COURT:  Thank you.  Put the correct amount, best</td></tr>
</table>

1          THE COURT:  Thank you.  Put the correct amount, best

2     of your ability, with the outstanding indebtedness on the

3     mortgage.

4          MR. FROCCARO:  Judge, may I hand it up?

5          THE COURT:  Yes.

6          MR. FROCCARO:  Thank you.

7          THE COURT:  Do you have any other property, apart from

8     the home; stocks, bonds?

9          THE DEFENDANT:  No, your Honor.

10          THE COURT:  Autos?

11          THE DEFENDANT:  I lease a vehicle, yes, your Honor.

12          THE COURT:  Mr. Ketabchi, do you swear under penalty

13     of perjury that the statements you've set forth in this CJA

14     financial affidavit 23 form are true and accurate?

15          THE DEFENDANT:  Yes, your Honor.

16          THE COURT:  I'm signing this.  I am approving it.  And

17     is Mr. Froccaro correct in his letter to me that you no longer

18     wish him to be your attorney?

19          THE DEFENDANT:  Yes, your Honor.  Not that I wish.  I

20     couldn't afford to pay the rest of the money, so he didn't want

21     to represent me anymore without the money.

22          THE COURT:  All right.  I'm going to relieve

23     Mr. Froccaro and I'm going to appoint Mr. Becker as your

24     attorney pursuant to the Criminal Justice Act.  You will not be

25     responsible for Mr. Becker's fees or expenses.  That will be

H8U3KETC

1    paid out of Criminal Justice Act funds.

2              Mr. Froccaro, I am directing you to turn over the

3    files to Mr. Becker and to assist in all ways in getting up to

4    speed on this matter.

5              MR. FROCCARO:  I will, your Honor.  I gave him all the

6    discovery today.  If there is anything else Mr. Becker needs,

7    I've known him for years, I'm more than happy to help.

8              THE COURT:  Mr. Ketabchi, the CJA attorney on duty

9    today and the CJA on duty tomorrow both had conflicts with

10   regard to this case, so I've appointed Mr. Becker as the CJA on

11   duty on Friday.

12             And Mr. Becker, I believe you know that this case has

13   been set down for trial on April 16, and it will go to trial on

14   that date.  And I take it you're able to represent Mr. Arash

15   Ketabchi.

16             MR. BECKER:  Your Honor, I don't have any conflicts in

17   April of 2018 or I would have raised them with your Honor's

18   deputy.  I'd like to think that between now and April '18 is

19   sufficient time for me to be prepared to go to trial.  I

20   understand that co-counsel in this case have had about a

21   six-month head start on me.  But barring some unforeseen

22   circumstance in terms of discovery or something, yes, I would

23   be prepared to go to trial in April of 2018.

24             THE COURT:  I'll take that as you are prepared to go

25   to trial in April, barring some unforeseen circumstance.

H8U3KETC

1      Is there anything else I need do?  Let me sign this

2  order that says that the request of James R. Froccaro, Junior,

3  to be relieved as counsel is hereby ordered that James R.

4  Froccaro, Junior's relieved, and Gary Becker is appointed

5  pursuant to the Criminal Justice Act to assume the

6  representation of Arash Ketabchi.

7      Government, is there anything else I can do at this

8  point?

9      MS. FLETCHER:  Nothing from the government, thank you,

10  your Honor.

11      THE COURT:  Mr. Becker, is anything at this point I

12  can do for the defense?

13      MR. BECKER:  Yes, your Honor, two matters.  The first

14  concerns the scheduling of motions in this matter.  I

15  understand the Court entered an order July 19 scheduling

16  defense motions to be due September 18, which is of course just

17  a little over two and a half weeks from now.  And I would ask

18  the Court, in view of the government's representation that the

19  amount of discovery in this case is massive, that I be given at

20  least sufficient time commensurate with the time that the other

21  lawyers in the case were given to review the discovery and make

22  any motions particular to Mr. Ketabchi's matter.

23      THE COURT:  I can't give you the amount of time

24  they've had from the beginning of the case, that's for sure.

25  But I can extend the September 18 deadline by a couple of weeks

H8U3KETC

1    if that's what you're asking.

2              MR. BECKER:  No, your Honor.  I was quite frankly

3    asking if the Court would consider extending the deadline to

4    approximately mid November.  That would give me a little over

5    two months to review the discovery.

6              Discovery was provided, I understand, to the other

7    counsel both in June and July.  The most recent discovery was

8    July 19.  So that gives those counsel a full two months, and

9    they had discovery as early as June, which would give them a

10   full three months.

11             I don't know how I can possibly review what I'm told

12   by the government is just a massive amount of discovery,

13   including eight search warrants, many of which might implicate

14   Mr. Ketabchi's expectation of privacy and Fourth Amendment

15   rights and just a ton of other documents.

16             THE COURT:  What are you asking for?

17             MR. BECKER:  I'm asking for November 21, your Honor.

18             THE COURT:  I can give you until November 9.

19             MR. BECKER:  Okay.  Very well.

20             THE COURT:  The last date is November 9.

21             MR. BECKER:  Thank you, your Honor.  Your Honor --

22             THE COURT:  Just a moment.

23             MR. BECKER:  Yes.

24             THE COURT:  Response November 16; reply, if any,

25   November 21 for any motions that relate to Arash Ketabchi.

H8U3KETC

1        Yes, sir.  What else?

2        MR. BECKER:  Yes, your Honor.  The second matter

3   concerns condition of bail that pertains both to Mr. Ketabchi

4   and I suppose to all the defendants.  And I noticed this on

5   the -- I had an opportunity to review the docket entries today.

6   On 4/28/17, when the Court set bail, it imposed as one of the

7   conditions the condition that, quote, the defendants shall not

8   communicate with each -- with other defendants except with

9   their attorneys present.

10        I saw that, and it struck me, because, quite frankly,

11   I don't think I've ever seen such a bail condition where

12   defendants were not allowed to speak with one another.  I have

13   multiple --

14        THE COURT:  They are, but their attorneys have to be

15   present.

16        MR. BECKER:  Yes, I mean absent -- I meant to say I've

17   never seen a condition where the defendant's right to speak

18   with his co-defendant was fettered in that manner.  And if I

19   could just give the Court a little background.

20        I've been in many cases, including currently,

21   involving violent gang members, who are all incarcerated,

22   either at the MDC or the MCC in multiple gang cases.  There is

23   no prohibition against them speaking with one another.

24        The right to confer with their fellow defendants, I

25   respectfully submit, implicates their First Amendment right of

H8U3KETC

1    association.  It is one of the foundations of our society.  It

2    is the right of individuals to combine with other persons in

3    pursuit of a common goal by lawful means.  That's a Supreme

4    Court decision in NAACP v. Claiborne Hardware Co.

5            The statute, your Honor, authorizes the Court to

6    impose the least restrictive condition of bail that is

7    necessary to reasonably assure the defendant's appearance and

8    the safety of the community.  So absent some particularized

9    showing why the defendant's appearance and the safety of the

10   community cannot be reasonably assured, absent the imposition

11   of that condition, I would respectfully submit that it should

12   not be a condition.

13           The defendant also has a due process right to speak

14   with his fellow defendants in connection with the case, if they

15   choose to.  He's got more at stake in this case than anyone.

16   His Sixth Amendment right --

17           THE COURT:  Why does he have more at stake than

18   anyone?

19           MR. BECKER:  Pardon me?

20           THE COURT:  Why does he have more at stake in this

21   case than anyone?

22           MR. BECKER:  Because his liberty is at stake, your

23   Honor.

24           THE COURT:  Is he the only one?

25           MR. BECKER:  No, I didn't mean --

H8U3KETC

1          THE COURT:  He's not incarcerated.

2          MR. BECKER:  I didn't mean more than his fellow --

3     what I meant is that the interest that he has in this case is

4     paramount.  I misspoke when I said -- forgive me.  That's all I

5     meant.

6          THE COURT:  I understand.

7          MR. BECKER:  Your Honor, the Sixth Amendment provides

8     him with the right to assistance of counsel.  I'm there to

9     assist him; he's not there to assist me.  It seems to me that

10    he has every right under the First Amendment, under due

11    process, to speak with his co-defendants, absent some

12    particularized showing why --

13         THE COURT:  I take it he doesn't have a right to

14    conspire with them to break the law, correct?

15         MR. BECKER:  That is absolutely so, your Honor.  If in

16    speaking with his co-defendants he is found to have done that,

17    then he is of course subject not only to revocation of bail,

18    but he's subject of course to new charges.

19         But, when I think about all the cases I've been in

20    over the years, some rather notorious, involving allegedly

21    dangerous people, I've never seen such a condition.  And I

22    inquire whether or not this condition was imposed following due

23    consideration by the Court and the opportunity for the parties

24    to air out their positions.  I'm not sure that it was.

25         THE COURT:  It was not separately briefed, but there

H8U3KETC

1    certainly was a discussion.

2              All right.  Let me hear from the government.

3    Mr. Becker is telling me he's had many, many cases with very

4    dangerous people, involving physical danger, although not

5    financial danger apparently.  And this is really a foundational

6    issue here that does not let the man exercise a variety of his

7    Constitutional rights.

8              What's the response of the government?

9              MS. FLETCHER:  Your Honor, I would direct your Honor's

10   attention to the provisions in the Bail Reform Act that lay out

11   conditions that your Honor can set.  In particular, 3142(c)(iv)

12   and 3142(c)(v).

13             THE COURT:  Just a moment.

14             MS. FLETCHER:  Sure.

15             MR. FROCCARO:  Judge, would it be okay if I leave?

16             THE COURT:  Yes, of course you may leave.

17             Let's follow the trail.  3142(c)(1)(v).

18             MS. FLETCHER:  Yes.

19             THE COURT:  And you cited another provision.

20             MS. FLETCHER:  The one just before it, (iv).

21             THE COURT:  If the judicial officer determines that

22   the release described in Subsection (b) of this section, which

23   is entitled release on personal recognizance or unsecured

24   appearance bond.

25             Is that the situation here, government?

H8U3KETC

1      MS. FLETCHER:  Your Honor, I'm sorry.  I don't have a

2  statute book with me.  I was not aware this issue was going to

3  be raised.  I looked these provisions up on my phone before the

4  proceeding started.  My understanding is these are examples of

5  conditions the Court can set.

6      THE COURT:  Let me look.  If the judicial officer

7  determines that the release described in Subsection (b), which

8  as I say is entitled release on personal recognizance or

9  unsecured appearance bond, will not reasonably assure the

10 appearance of the person as required or will endanger the

11 safety of any other person or the community, such judicial

12 officer shall order pretrial release of the person subject to

13 the least restrictive further condition that such judicial

14 officer determines will reasonably assure the appearance of the

15 person as required and the safety of any other person and the

16 community, which may include the condition that the person

17 abide by specified restrictions on personal associations, place

18 of abode or travel.  And the other provision is avoid all

19 contact with an alleged victim of the crime, and with a

20 potential witness who may testify concerning the offense.

21      Mr. Becker, do you know if your client's released on

22 an unsecured appearance bond?

23      MR. BECKER:  My client is released on an appearance

24 bond that is secured by property valued at $100,000, is my

25 understanding.

H8U3KETC

1          THE COURT:  Somebody will have to follow this trail to

2     see if there is a separate provision for those released on a

3     secured appearance bond.  This is the only thing I've been

4     directed to.  And I take it, government, your argument is the

5     other defendants -- well, I won't make your argument.

6          What is your argument?

7          MS. FLETCHER:  Yes, your Honor.  So when this

8     condition was raised to your Honor at the initial appearance, I

9     had an opportunity to speak with all counsel for all defendants

10    about this condition, including Mr. Froccaro.  And the reason

11    there was no discussion about the reason for the condition is

12    that all of the defendants consented to it, but I am happy to

13    explain why, in the government's view, a prohibition on

14    Mr. Ketabchi's ability to associate with his co-defendants is

15    particularly appropriate and still satisfies the Bail Reform

16    Act's requirement that the Court impose only the least

17    restrictive conditions.

18         My request for this condition in particular was

19    because in connection with the arrests of the six defendants on

20    March 21 of this year, I learned from more than one person who

21    was present when Mr. Ketabchi was in a room with his

22    co-defendants that Mr. Ketabchi said, in no uncertain terms to

23    his co-defendants --

24         THE COURT:  We're talking about this Mr. Ketabchi.

25         MS. FLETCHER:  This Mr. Ketabchi, not his brother,

H8U3KETC

1    who, yes, is one of his co-defendants.  This Mr. Ketabchi.

2    That he said to his co-defendants, and I won't use the exact

3    words that he used --

4              THE COURT:  We're big people here, and we've read lots

5    of tweets, so why don't you tell me in exact words.

6              MS. FLETCHER:  I'm not sure I can say the F word in

7    your Honor's presence.  But my understanding is that

8    Mr. Ketabchi directed his co-defendants to keep their F'ing

9    mouths shut and get their lawyers.

10             THE COURT:  And you're representing that others who

11   were there have represented that's what he said.

12             MS. FLETCHER:  Yes, both law enforcement witnesses who

13   were present and at least one of his co-defendants.  So it was

14   that, that communication that initially prompted the government

15   to seek this condition.

16             And the government's view is that if, as the

17   government expects he was doing, Mr. Ketabchi is trying to tell

18   his co-defendants, who are at least potential witnesses in the

19   case against him and may actually be witnesses in the case

20   against him, not to talk, that he's essentially obstructing and

21   intimidating witnesses.

22             So, your Honor will recall that I was asking your

23   Honor to make very clear instructions that they not speak with

24   each other precisely because of this concern.

25             I have since learned of additional instances of

H8U3KETC

1    communications between co-defendants in this case that, in the

2    event your Honor is inclined to revise this bail condition, I'd

3    ask for an opportunity to write to the Court about.  But I can

4    represent to your Honor that the restriction on the ability to

5    communicate with co-defendants is primarily motivated by this

6    Mr. Ketabchi's conduct.

7              THE COURT:  Thank you.  Sir.

8              MR. BECKER:  Yes, your Honor.  The conditions of bail

9    that the government cited to your Honor, which are reflected in

10   the statute, are certainly conditions that the Court in

11   appropriate circumstances can impose.  And those are

12   circumstances where the Court makes a finding that, absent

13   imposition of those conditions, the defendant's appearance in

14   court and danger to the community cannot -- you know, that he

15   will not present a danger to the community cannot reasonably be

16   assured.  That is the touchstone that guides the Court's

17   consideration here, whether or not the condition is necessary

18   and whether it is the least restrictive condition to reasonably

19   assure his appearance and safety of the community.

20             I submit that what the government just cited to your

21   Honor respectfully doesn't come within a mile of that, for the

22   following reason.  First of all, if I heard the government

23   correctly, what Mr. Ketabchi said upon arrest to his

24   co-defendants was keep your F'ing mouth shut and get a lawyer.

25   I suggest that was good advice.  I suggest that's advice I

H8U3KETC

1     would have given.

2              The notion that someone is saying the best thing you

3     can do is have a lawyer, the notion that that somehow is

4     obstruction of justice or presents risk of flight or danger to

5     the community, respectfully, I don't see a connection.

6              Your Honor talked about how we're all adults here and

7     we've read tweets.  Many of the tweets that we have read over

8     the past few months are by our commander in chief who says the

9     most outrageous things, and then the next day his spokespeople

10    say, well, you can't take him literally.

11             If the Court or the government has concern that

12    Mr. Ketabchi has said something that some skillful prosecutor

13    might say could be touching on obstruction of justice, and I

14    submit that comment doesn't come close, then he can be

15    admonished and warned to not do anything like that.  But his

16    First Amendment right of association can only be taken away,

17    your Honor, if there is a showing that it is necessary to

18    reasonably assure his appearance and the safety of the

19    community.  And that has not even been attempted to be shown by

20    the government.

21             THE COURT:  Well, first of all, I don't think I was

22    referring to any tweets by the commander in chief, as you say.

23    What I really had in mind was the use of the F word from the

24    erstwhile communications director of the White House in tweets,

25    if I'm not mistaken.

H8U3KETC

1              MR. BECKER:  Yes, your Honor.

2              THE COURT:  Putting that aside, this really has

3     nothing do with the commander in chief.  It has to do with what

4     language is appropriate in a court or in public or what isn't.

5              It seems to me there are really two aspects to this

6     issue.  One has to do with bail.  Your point there is a

7     restriction on who he can talk to has nothing to do with

8     ensuring the safety of the community or the appearance of the

9     defendant in court.  I haven't thought it through in quite

10    those terms.

11             Something tells me safety of the community isn't only

12    physical safety, that it may indeed relate to safety of the

13    community for the sake of being free from alleged financial

14    improprieties or not impropriety, but making victims of elderly

15    people through telemarketing, which is what the allegations are

16    here.  So I think there is at least a possibility that it could

17    come within the bail issue.

18             Secondly, the issue really is whether it is an

19    appropriate restriction separate and apart from bail.  That is,

20    is it appropriate in this case to say you can't talk to your

21    co-defendants because there is a concern of a continuing

22    conspiracy, or even, to use the government's phrase, I won't

23    say obstruction of justice, but putting pressure on

24    co-defendants not to talk, with what may be an inherent threat

25    if that's not followed, that direction to keep your F'ing mouth

H8U3KETC

1    shut and get a lawyer is not followed.

2            Now, I certainly understand what you're saying is,

3    boy, except for the F bomb, that's good advice.  Don't talk to

4    the government until you get a lawyer.  That's your point.

5            (Continued on next page)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

H8UJKET2                        Conference

1        THE COURT:  As I say, I haven't thought it through.

2        If you wish to press this point, Mr. Becker, because I

3   would view it as an application to alter bail conditions, if

4   that is how you want to do it, that is perfectly fine with me.

5   If you submit something to me in writing, the government will

6   have an opportunity to respond so I can analyze it in the

7   proper context.  If you don't want to follow up, that is okay

8   with me.  It is entirely up to you.

9        MR. BECKER:  Your Honor, I would like to just add that

10  the court's concern regarding whether a financial crime can

11  come within the rubric of the interests of the community is an

12  interesting one, but respectfully, I don't think it is

13  particularly pertinent here because the government has not

14  alleged that the defendant said anything suggestive of

15  continuing the conspiracy or said anything that should give the

16  court concern that absent this restriction, the crimes will

17  continue and those crimes would present a danger.

18        THE COURT:  Well, there is a suggestion by the

19  government it was inchoate, it was additional information that

20  I take it the government was suggesting was appropriate only in

21  an in-camera proceeding to be disclosed.  I don't know what

22  there is out there.  The government was again suggesting that

23  they had additional information along the lines of statements

24  Mr. Ketabchi made.

25        MR. BECKER:  Your Honor, if the government said

1    ex-parte or in camera, I may have missed it.

2            THE COURT:  No, they did not say that.  That was an

3    inference drawn by me.

4            MR. BECKER:  You know, again what we have on the

5    record as of this moment is nothing that would suggest a danger

6    of continuing crimes which might then come under the rubric of

7    danger to the community.  We have nothing but someone telling

8    his co-defendants be smart, get a lawyer, in colorful language.

9    I open my comments by talking about defendants in violent cases

10   who have never been subject to this restriction.  I have been

11   in many, many white collar financial crimes cases involving

12   multiple defendants.  Never once --

13           THE COURT:  You said that several times.

14           MR. BECKER:  I thought I said it only as to the

15   violent.  I am saying it also with respect to the financial

16   crimes, that I haven't seen it.

17           THE COURT:  What I gather from your statements, you

18   view yourself as an experienced criminal defense lawyer, that

19   is exactly why you're on the CJA panel, I appreciate that and

20   you've never seen this before.

21           MR. BECKER:  Yes, your Honor.

22           With respect to the court's invitation to submit

23   something in writing, while I am never shy about submitting

24   something in writing, I think that on the state of the record

25   as we have it, I feel comfortable that the court does not

1    respectfully have a basis to impose this condition.

2              If anything, I think the burden should be on the

3    government as to why it should remain in place.  Unless the

4    court is prepared to make a finding that a defendant saying to

5    his co-defendants, "you better F'ing shut up and get a lawyer"

6    presents a risk of flight or danger to the community, which

7    respectfully I think would be quite a stretch, then I think the

8    record --

9              THE COURT:  Fair enough.  I understand.  Let me hear

10   from the government.

11             MS. FLETCHER:  Your Honor, I think it is more

12   appropriate Mr. Becker make a written submission.  As you

13   noted, this is a request for modification of bail, and in the

14   event Mr. Becker does make a submission, the government would

15   like an opportunity to respond.  I think what is happening here

16   is Mr. Becker is hoping your Honor will, pardon the term, be

17   bullied into changing the condition now without having the

18   opportunity to review the written submission that I promise

19   your Honor I would like to submit.

20             THE COURT:  I do not in the least feel bullied.  This

21   is a very interesting discussion.

22             MS. FLETCHER:  I don't expect your Honor would feel

23   bullied.

24             THE COURT:  If anything, he is showing his bona fides

25   as a CJA attorney.

H8UJKET2                      Conference

1          MS. FLETCHER:  He is certainly the more experienced

2     lawyer in this area of the courtroom.

3          THE COURT:  Don't you be bullied by his saying he has

4     seen many, many cases.  I have seen many, many lawyers who said

5     they have seen many, many cases who have not, but that is not

6     Mr. Becker.  Enough!  Enough!

7          Mr. Becker, you can make whatever -- I do want it in

8     writing.  You can make it whatever length you want, but I am

9     taking this as a request to alter bail conditions, do it under

10    that rubric, and the government will respond.

11         MR. BECKER:  I would be happy to do so, your Honor.

12         THE COURT:  Thank you.  I do appreciate this

13    discussion, and nobody in my courtroom should ever feel

14    bullied, and I guarantee you I never have.

15         MR. BECKER:  Your Honor, I hope it goes without saying

16    that the notion that I would consider acting in a way that

17    might be construed as bullying is eons from who I am and

18    certainly not what I am trying to accomplish here today.

19         THE COURT:  Enough.  I will see everyone at the next

20    scheduled conference.  Actually, I don't think there is a

21    scheduled conference.

22         THE CLERK:  It is an argument that is scheduled.

23         THE COURT:  There is argument scheduled on the

24    motions.  Thank you, all.

25         (Court adjourned)