I826ketp

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4                v.                        17 CR 243(SHS)

5   ARASH KETABCHI,

6                Defendant.

7   ------------------------------x

8                                          New York, N.Y.
                                           August 2, 2018
9                                          3:00 p.m.

10
    Before:
11
                         HON. SIDNEY H. STEIN,
12
                                           District Judge
13

14                           APPEARANCES

15  GEOFFREY S. BERMAN
         United States Attorney for the
16       Southern District of New York
    ROBERT B. SOBELMAN
17       Assistant United States Attorney

18  GARY G. BECKER, ESQ.
         Attorney for Defendant
19
    Also present:
20  Special Agent Evan Picariello, Dept. Homeland Security

21

22

23

24

25

I826ketp

1        (In open court; case called)

2        THE DEPUTY CLERK:  Counsel, please state your names

3   for the record.

4        MR. SOBELMAN:  Robert Sobelman for the United States.

5   I am joined at counsel table by Special Agent Evan Picariello

6   of Homeland Security Investigations.

7        Good afternoon, your Honor.

8        THE COURT:  Good afternoon, gentlemen.

9        MR. BECKER:  Good afternoon, your Honor.  I am Gary

10  Becker.  With me here today is Arash Ketabchi, standing next to

11  me.

12       THE COURT:  Please be seated in the courtroom.

13       Do you have an application, Mr. Becker?

14       MR. BECKER:  Yes, your Honor.  My application is to

15  permit Mr. Ketabchi to withdraw his previously entered plea of

16  not guilty and to make a plea of guilty to Count One of the

17  indictment.

18       THE COURT:  Is the plea agreement that I have on my

19  desk, and apparently executed, identical to the agreement that

20  was sent to my chambers?

21       MR. SOBELMAN:  Yes, your Honor.

22       THE COURT:  Swear the defendant in, please.

23       THE DEPUTY CLERK:  Please stand and raise your right

24  hand.

25       (Defendant sworn)

I826ketp

1          THE DEPUTY CLERK:  Please state your full name and

2    spell your name for the record.

3          JUROR:  Arash Ketabchi.  A-r-a-s-h.  Last name is

4    K-e-t-a-b-c-h-i.

5          THE COURT:  Just a moment.

6          (Pause)

7          THE COURT:  Mr. Ketabchi, do you understand, sir, that

8    you are now under oath and if you answer any of my questions

9    falsely, your false or untrue answers may later be used against

10   you in another prosecution for perjury or for making a false

11   statement?

12         THE DEFENDANT:  Yes, your Honor.

13         THE COURT:  How old are you, sir?

14         THE DEFENDANT:  44.

15         THE COURT:  How far did you get in school?

16         THE DEFENDANT:  I graduated high school, 12th grade.

17         THE COURT:  Are you able to read, write speak, and

18   understand English?

19         THE DEFENDANT:  Yes, your Honor.

20         THE COURT:  Is English your native language, sir?

21         THE DEFENDANT:  No, your Honor.

22         THE COURT:  When you did you start learning English?

23         THE DEFENDANT:  I believe it was around five years

24   old.

25         THE COURT:  I take it you are fluent in reading,

I826ketp

1    speaking and understanding English?

2              THE DEFENDANT:  Yes, your Honor.

3              THE COURT:  Do you want an interpreter here for any

4    reason?

5              THE DEFENDANT:  I don't, your Honor.

6              THE COURT:  Are you now or have you recently been

7    under the care of a doctor or a psychiatrist?

8              THE DEFENDANT:  Yes, your Honor.

9              THE COURT:  What is that?

10             THE DEFENDANT:  I see a psychiatrist and also a

11   therapist.

12             THE COURT:  For reasons related to this indictment

13   against you?

14             THE DEFENDANT:  No, prior to.  I have been mental

15   illness for years now.

16             THE COURT:  Is there a diagnosis?

17             THE DEFENDANT:  Yes, your Honor.

18             THE COURT:  What is that?

19             THE DEFENDANT:  Bipolar, depression, and manic

20   depression.

21             THE COURT:  Thank you.

22             Have you ever been treated or hospitalized for any

23   mental illness, or any type of addiction including drug or

24   alcohol addiction.  Exclude the treatment by therapists for the

25   diagnoses you just talked about as long as they are not

I826ketp

1    inpatient.

2              THE DEFENDANT:  Yes, your Honor, multiple times I

3    have.

4              THE COURT:  For the diagnoses you have just told me

5    about or others?

6              THE DEFENDANT:  Others.  I have been in psyche wards a

7    couple times and I have had multiple inpatient drug and rehab

8    facilities.

9              THE COURT:  What drugs are you taking now -- drugs,

10   medicines or pills are you taking now, sir?

11             THE DEFENDANT:  I am taking prescription drugs.  I am

12   taking Topamax every morning with 50 milligrams.  I am taking

13   100 or 200 milligrams -- I can't remember -- of Lamictal.  And

14   5 milligrams of Zyprexa every evening.  That's three total

15   drugs.

16             THE COURT:  Have you taken those three drugs in the

17   past 24 hours?

18             THE DEFENDANT:  Yes, your Honor.

19             THE COURT:  Any others?

20             THE DEFENDANT:  No, your Honor.

21             THE COURT:  Have you had any alcoholic beverage in the

22   last 24 hours?

23             THE DEFENDANT:  No, your Honor.

24             THE COURT:  Do those drugs in any way affect your

25   cognition, that is, your ability to think or to understand me

I826ketp

1    or anyone else or to express yourself?

2              THE DEFENDANT:  No, your Honor.

3              THE COURT:  Is your mind clear right now?

4              THE DEFENDANT:  Yes, your Honor.

5              THE COURT:  Are you feeling all right?

6              THE DEFENDANT:  I feel good.  A little nervous, but

7    you know.

8              THE COURT:  That's understandable.

9              I take it you believe you have clarity of thought.

10   That is my concern.

11             THE DEFENDANT:  Yes, your Honor.  I am fine with that.

12             THE COURT:  Do you have an attorney here today?

13             THE DEFENDANT:  Yes.  To my right.

14             THE COURT:  Who is that?

15             THE DEFENDANT:  Mr. Becker.

16             THE COURT:  Mr. Becker, do you have any doubt as to

17   Mr. Ketabchi's competence to plead at this time especially

18   given his comments about multiple inpatient treatment?

19             MR. BECKER:  No, your Honor.

20             THE COURT:  Mr. Ketabchi, you've heard Mr. Becker tell

21   me that you wanted to enter a plea of guilty to Count One of

22   the information against you.  Is that true?  Do you wish to

23   plead guilty?

24             THE DEFENDANT:  Yes, your Honor.

25             THE COURT:  Have you had a full opportunity to discuss

I826ketp

your case with Mr. Becker and to discuss the consequences of

entering a plea of guilty?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Are you satisfied with Mr. Becker and his

representation of you?

THE DEFENDANT:  Very satisfied.

THE COURT:  On the basis of Mr. Ketabchi's responses

to my questions and my observations of his demeanor as he

stands here before me today and on prior occasions in this

litigation, I make the finding that he is fully competent to

enter an informed plea at this time.

Before I accept a plea from you, sir, I am going to

ask you certain questions.  My questions are intended to

satisfy me that you wish to plead guilty because you are in

fact guilty of the crime to which you want to enter a plea of

guilty and that you fully understand the consequences of

entering a plea of guilty.  I am going to be describing to you

certain rights you have under the Constitution and laws of the

United States.

You are going to be giving up those rights, every one

of them, if you enter a plea of guilty today.  I want you to

listen to me carefully and if you don't understand anything I

am saying to you or anything I am asking you, I want you to

stop me.  You can ask me anything you want.  You can ask Mr.

Becker anything you want.  My concern is to make certain that

I826ketp

1   you understand what I am asking you and that you understand

2   what I am saying to you.

3          Do you understand that?

4          THE DEFENDANT:  Yes, your Honor.

5          THE COURT:  Under the Constitution and laws of the

6   United States, Mr. Ketabchi, you have a right to speedy and

7   public trial by a jury on the charges against you, which are

8   contained in Indictment 17 CR 243.

9          Do you understand that?

10         THE DEFENDANT:  Yes, your Honor.

11         THE COURT:  If there were a trial, you would presumed

12  innocent and the government would be required to prove you

13  guilty by competent evidence and beyond a reasonable doubt.

14  You would not have to prove you were innocent at trial.

15         Do you understand that?

16         THE DEFENDANT:  Yes, your Honor.

17         THE COURT:  If there were a trial, a jury of composed

18  of 12 people selected from this district would have to agree

19  unanimously that you were guilty.

20         Do you understand those rights?

21         THE DEFENDANT:  Yes, your Honor.

22         THE COURT:  You also have a right to be represented by

23  an attorney at a trial and at every other stage of the

24  proceedings against you.  And if you cannot afford an attorney,

25  an attorney is going to be given to you at no charge to you.

I826ketp

1    You will not have to pay for that attorney's services.

2                Do you understand those rights?

3                THE DEFENDANT:  Yes, your Honor.

4                THE COURT:  If there were a trial, sir, you would have

5    the right to see and hear all of the witnesses against you.

6    You would have of the right to have your attorney cross-examine

7    those witnesses.  You also will have the right to have your

8    attorney object to any of the government's evidence, and you

9    would have the right to have your attorney offer evidence on

10   your own behalf if you so desired, and you also would have the

11   right to have subpoenas issued or other compulsory process used

12   to compel witnesses to testify in your defense.

13               Do you understand all those rights?

14               THE DEFENDANT:  Yes, your Honor.

15               THE COURT:  If there were a trial, you would have the

16   right to testify if you wanted to but, Mr. Ketabchi, nobody

17   could force you to testify if you did not want to testify.  The

18   decision of whether or not to testify would be entirely yours.

19               In addition, if you decided not to testify at your

20   trial, the jury would be instructed that they could draw no

21   inference or suggestion of guilt from the fact that you decided

22   not to testify.

23               Do you understand all those rights, sir?

24               THE DEFENDANT:  Yes, your Honor.

25               THE COURT:  Do you understand that by entering a plea

I826ketp

1    of guilty today, you are giving up each and every one of your

2    rights I described, you are waiving those rights, and you will

3    have no trial?

4              THE DEFENDANT:  Yes, your Honor.

5              THE COURT:  Do you understand that you have the

6    ability to change your mind right now, Mr. Ketabchi, and you

7    can refuse to enter this plea of guilty?  You don't have to

8    enter it if you do not want to for any reason.  You can change

9    your mind right now and decide you don't want to plead guilty.

10             Do you understand those rights?

11             THE DEFENDANT:  Yes, your Honor.

12             THE COURT:  Have you received a copy of Indictment 17

13   CR 243?

14             THE DEFENDANT:  Yes, your Honor.  It is here in front

15   of me.

16             THE COURT:  Did you read it?

17             THE DEFENDANT:  I did.

18             THE COURT:  Did you discuss it with Mr. Becker?

19             THE DEFENDANT:  Yes.

20             THE COURT:  You have the right to have me read that

21   indictment to you in open court.  Similarly, if you don't want

22   me to read it, I won't.

23             What is your pleasure, sir?

24             THE DEFENDANT:  I am okay.  Mr. Becker went over it.

25   I don't need you to read it.

I826ketp

|    |                                                                 |
|----|-----------------------------------------------------------------|
| 1  | THE COURT:  I accept that as a knowing and voluntarily          |
| 2  | waiver of the right to have the indictment read in open court.  |
| 3  | Do you understand that you are charged in Count One             |
| 4  | with participating in a conspiracy to commit wire fraud in      |
| 5  | violation of 18, U.S.C, 1349?                                    |
| 6  | THE DEFENDANT:  Yes, your Honor.                                |
| 7  | MR. BECKER:  Your Honor, I believe it is 1343.                  |
| 8  | THE COURT:  All right.  Let's see.                             |
| 9  | Government, what is the government's position?                  |
| 10 | MR. SOBELMAN:  Your Honor, 1349 is the conspiracy              |
| 11 | statute.  Your Honor is correct.                               |
| 12 | MR. BECKER:  Your Honor, forgive me.  I was referring         |
| 13 | to the substantive.  Forgive me.                               |
| 14 | THE COURT:  No, it's the conspiracy.  Just to be              |
| 15 | certain, I am going to take a look.                            |
| 16 | MR. SOBELMAN:  To clarify 1343 is the object of the           |
| 17 | conspiracy, which is referenced in the indictment.            |
| 18 | MR. BECKER:  Your Honor, I stand corrected.                   |
| 19 | THE COURT:  That's all right.                                 |
| 20 | Yes, 1349 is the conspiracy.  Any person who attempts          |
| 21 | to conspire to commit any offense under this chapter, shall be  |
| 22 | subject to the same penalties as those prescribed in the       |
| 23 | offense, the commission of which was the object of the         |
| 24 | conspiracy.  1343 is the substantive crime of wire fraud.      |
| 25 | So let me go back.  Do you understand that Count One           |

I826ketp

of Indictment 17 CR 243, sir, charges you with conspiring to

commit wire fraud in violation of 18, United States Code,

Section 1349?

          THE DEFENDANT:  Yes, your Honor.

          THE COURT:  Do you understand that if you did not

plead guilty, the government would have to prove each and every

element of the charge in Count One beyond a reasonable doubt at

a trial?

          THE DEFENDANT:  Yes, your Honor.

          THE COURT:  Mr. Sobelman, please, inform Mr. Ketabchi

of the elements of the charge?

          MR. SOBELMAN:  The charge has two elements:  First,

that two or more persons in some way or manner agreed to try to

accomplish a common and unlawful plan to commit wire fraud;

two, the defendant knew the unlawful purpose of the plan and

willfully joined in it.

          The substantive crime of wire fraud, which was the

object of the conspiracy has three elements.  First, that the

defendant devised a scheme to defraud or to obtain money or

property by materially false or fraudulent pretenses,

representations, or promises or willfully participated in such

a scheme with knowledge of its fraudulent nature; two, the

defendant acted with intent to defraud; and three, in

advancing, furthering or carrying out the scheme, the defendant

transmitted any writing, signal or sound by means of a wire,

I826ketp

radio or television communication in interstate commerce or

caused the transmission of any writing, signal or sound of some

kind by means of a wire, radio or television communication in

interstate commerce.

THE COURT:  Mr. Ketabchi, do you understand those are

the elements the government would have it prove beyond a

reasonable doubt before a jury could return a verdict of guilty

against you?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  In addition to what Mr. Sobelman

mentioned, the government is required to prove that venue lies

in the Southern District of New York, which is a fancy way of

saying at least one act of the conspiracy took place in the

Southern District of New York.

Do you understand that?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  The burden is on the government to prove

at least one act in connection with the conspiracy took place

in the Southern District of New York.  It is not prove beyond a

reasonable doubt.  It is simply proof by a evidence.

Do you understand that?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Do you understand that the maximum

possible penalty of conspiring to commit wire fraud is 20

years' imprisonment, three years' supervised release, a fine of

I826ketp

the greatest of $250,000 or twice the gross pecuniary gain

derived from the offense or twice the gross pecuniary loss to

individuals other than you resulting from the offense, plus a

$100 mandatory special assessment; do you understand that?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Now, I mentioned that part of the maximum

term was the term supervised release.  Supervised release, sir,

means you will be subject to monitoring by the Probation

Department upon your release from prison.  That monitoring will

be under certain terms and conditions, which if you violate

them could lead to your reimprisonment without a jury trial for

all or part of the term of supervised release and even without

credit for any time you may have already served on postrelease

supervision.

Do you understand that?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  I also have the authority to order

restitution to anyone injured as a result of your criminal

conduct.

Do you understand that?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Do you also understand if I accept your

guilty plea, sir, and determine that you are guilty of

conspiring to commit wire fraud that determination may deprive

you of such valuable civil rights such as the right to vote,

I826ketp

1    the right to hold public office, the right to serve on a jury,

2    and the right to possess any kind of firearm?

3              THE DEFENDANT:  Yes, your Honor.

4              THE COURT:  Mr. Becker, is your client a United States

5    citizen?

6              MR. BECKER:  Yes, your Honor.

7              THE COURT:  Mr. Ketabchi, under current law there are

8    sentencing guidelines that judges have to apply to determine

9    what a fair and reasonable sentence is for each defendant who

10   comes before that judge.

11             Have you talked to Mr. Becker about the guidelines?

12             THE DEFENDANT:  Yes, your Honor.

13             THE COURT:  Do you understand that I won't be able to

14   determine what sentence is appropriate here until I first

15   determine what the proper guideline range is; do you understand

16   that?

17             THE DEFENDANT:  Yes, your Honor.

18             THE COURT:  To help me determine that, I am going to

19   receive a report from the Probation Office.  You'll have an

20   opportunity to be interviewed by them.  Mr. Becker will have

21   the ability to be there.  I want you to give them complete and

22   accurate information because I am going to use that report in

23   determining what your sentence is.

24             Do you understand that?

25             THE DEFENDANT:  Yes, your Honor.

I826ketp

1        THE COURT:  You'll have an opportunity as will Mr.

2   Becker and Mr. Sobelman to object to any findings of fact in

3   that report.  If there are any objections, I will adjudicate

4   them.

5        I am going to use that report in determining what the

6   appropriate guideline range is.  Even after I determine what

7   the appropriate guideline range is, I then have to determine

8   whether a departure is available and should be employed by me.

9   If I do that, then you can be sentenced on the basis of a

10  departure from the guideline either above the guideline range

11  or below the guideline range.

12       Do you understand that?

13       THE DEFENDANT:  Yes, your Honor.

14       THE COURT:  Even after I do that, I then under the

15  current procedures set forth by the Supreme Court need to apply

16  all of the factors in 18, United States Code, Section 3553(a)

17  to determine what is an appropriate sentence here.

18       Do you understand that?

19       THE DEFENDANT:  Yes, your Honor.

20       THE COURT:  Do you understand that if you are

21  sentenced to prison, and at this point based on what I know of

22  this trial, you will be sentenced to prison, but I will keep an

23  open mind.

24       Parole has been abolished, sir, and you will not be

25  released any earlier on parole.  You will serve your term of

I826ketp

1    sentence without being released earlier on parole.

2              Do you understand that?

3              THE DEFENDANT:  Yes, your Honor.

4              THE COURT:  Do you understand that if Mr. Becker or

5    Mr. Sobelman has told you anything different about what your

6    sentence or estimated what it is likely to be or in fact told

7    you what they think it is going to be or even if you yourself

8    have a belief as to what your sentence is going to be,

9    everybody could be wrong; do you understand that?

10             THE DEFENDANT:  Yes, your Honor.

11             THE COURT:  That because I am going to sentence you

12   and I don't know what your sentence is going to be.  I need to

13   receive the information from the Probation Department.  I need

14   to listen to what Mr. Becker wants to submit to me.  The

15   victims have a right to submit information to me as well and

16   the government has a right to submit information.  I need all

17   of that information before I can determine what I am going

18   sentence you to.

19             If I do sentence you to something that you don't

20   expect or that is different from what people have told you it

21   is going to be, you still are going to be bound to your guilty

22   plea, sir.  You will not be allowed to withdraw it.

23             Do you understand?

24             THE DEFENDANT:  Yes, your Honor.

25             THE COURT:  Now, I have a document here and it is

I826ketp

1    dated July 27th.  It is six pages with exhibits.  It is

2    addressed to Mr. Becker.  It looks like it is signed by Mr.

3    Sobelman on behalf of the government.

4           I am going ask my deputy to mark it as Court Exhibit

5    1.  I will ask her to show you the last page.

6           Is that your signature on the last page?

7           THE DEFENDANT:  Yes, your Honor.

8           THE COURT:  Did you read that agreement before you

9    signed it?

10           THE DEFENDANT:  Yes, your Honor.

11           THE COURT:  Did you discuss it with Mr. Becker?

12           Did you discuss the plea agreement with Mr. Becker?

13           THE DEFENDANT:  Oh, yes, your Honor.

14           THE COURT:  Did you understand it when you signed it?

15           THE DEFENDANT:  Yes, your Honor.

16           THE COURT:  Do you understand it now?

17           THE DEFENDANT:  Yes, your Honor.

18           THE COURT:  Does this letter agreement -- I will refer

19    to it as a letter agreement -- the plea agreement, Government

20    Exhibit No. 1, constitute your complete and total understanding

21    of the entire agreement between yourself and the government and

22    your attorney?

23           THE DEFENDANT:  Yes, your Honor.

24           THE COURT:  Is everything about your plea and sentence

25    contained in this agreement?  In other words, are there any

I826ketp

1    side deals I should know about?

2          THE DEFENDANT:  No, your Honor.

3          THE COURT:  Has anyone offered you any inducements or

4    threatened you or forced you to plead guilty to enter into the

5    plea agreement?

6          THE DEFENDANT:  No, your Honor.

7          THE COURT:  Do you understand, sir, that in this

8    agreement you have agreed to waive your right to appeal the

9    sentence and you have agreed to waive your right to

10   collaterally attack the sentence if I sentence you to 87

11   months' imprisonment or less?

12         THE DEFENDANT:  Yes, your Honor.

13         THE COURT:  Do you understand that in this agreement

14   you have agreed to the entry of the consent order of

15   forfeiture?

16         THE DEFENDANT:  Yes, your Honor.

17         THE COURT:  Do you understand that in this consent

18   order of forfeiture, you've consented to a money judgment

19   against you in the amount of $1,059,803.84?

20         THE DEFENDANT:  Yes, your Honor.

21         THE COURT:  Do you understand that you have also

22   agreed in this plea agreement to make restitution in the amount

23   of $563,427.99?

24         THE DEFENDANT:  Yes, your Honor.

25         THE COURT:  Do you also understand you have agreed not

I826ketp

| 1 | to appeal any term of supervised release, that is, to the three

| 2 | years or less?

| 3 |          THE DEFENDANT:  Yes, your Honor.

| 4 |          THE COURT:  You've agreed not to appeal any fine that

| 5 | is less than or equal to $250,000?

| 6 |          THE DEFENDANT:  Yes, your Honor.

| 7 |          THE COURT:  And that you have agreed not to appeal any

| 8 | forfeiture amount that is less than or equal to $1,059,803.84?

| 9 |          THE DEFENDANT:  Yes, your Honor.

| 10 |          THE COURT:  You've agreed not to appeal any forfeiture

| 11 | amount that is greater than or equal to that same sum?

| 12 |          THE DEFENDANT:  Yes, your Honor.

| 13 |          THE COURT:  You've agreed not to appeal any

| 14 | restitution amount that is less than or equal to $563,427.99.

| 15 |          THE DEFENDANT:  Yes, your Honor.

| 16 |          MR. BECKER:  Your Honor, forgive me for jumping in.  I

| 17 | may have misheard the Court; but I thought I heard the Court

| 18 | ask Mr. Ketabchi whether he agreed that he was waiving any

| 19 | right to appeal an order of forfeiture in excess of the

| 20 | $1,059,083.84.

| 21 |          If I heard the Court correctly, I am not sure that is

| 22 | correct.

| 23 |          THE COURT:  Just a moment.

| 24 |          I think I may have read the government's obligation.

| 25 | Let me correct that.  Let's make sure.  Thank you, sir.  As I

I826ketp

1   was saying it, it didn't ring true.  So let me restate it.

2              You understand, sir, that you've agreed not to appeal

3   any fine as long as I impose a fine on you that is $250,000 or

4   less?

5              THE DEFENDANT:  Yes, your Honor.

6              THE COURT:  And that you've agreed not to appeal any

7   forfeiture that I impose on you, that is, the sum $1,059,803.84

8   or less?

9              THE DEFENDANT:  Yes, your Honor.

10             THE COURT:  You've agreed not to appeal any

11  restitution amount that I impose on you that is $563,427.99 or

12  less?

13             THE DEFENDANT:  Yes, your Honor.

14             THE COURT:  Mr. Becker, I think that clears it up.

15             MR. BECKER:  Absolutely.

16             THE COURT:  Government?

17             MR. SOBELMAN:  Yes, your Honor.  That's correct.

18             THE COURT:  Do you understand also in this agreement

19  that you are waiving your right to assert the statute of

20  limitations as a defense to the indictment against you?

21             THE DEFENDANT:  Yes, your Honor.

22             THE COURT:  Mr. Becker, are you aware of any valid

23  defense that would prevail at trial or know of any reason why

24  Mr. Ketabchi should not be permitted to plead guilty?

25             MR. BECKER:  No, your Honor.

I826ketp

1          THE COURT:  Sir, is there an adequate factual basis in

2     your view to support your client's plea?

3          MR. BECKER:  Yes, your Honor.

4          THE COURT:  Mr. Sobelman, in the view of the

5     government is there an adequate factual basis to support

6     Mr. Ketabchi's plea?

7          MR. SOBELMAN:  Yes, your Honor.

8          THE COURT:  Mr. Ketabchi, tell me what you did that

9     makes you guilty of conspiring to commit wire fraud?

10          THE DEFENDANT:  Your Honor, during some of the time

11     period charged in the indictment, I agreed with others to

12     engage in conduct that was fraud on members of the public

13     through telemarketing businesses.

14          In 2014 I went to work as a salesmen for a

15     telemarketing company selling business development products and

16     services.  The company was owned by William Sinclair and Mike

17     Finocchiaro and was called Olive Branch Marketing.

18          THE COURT:  Speak louder.

19          Olive--

20          THE DEFENDANT:  Olive Branch Marketing.

21          We offered for sale the setting up of limited

22     liability companies, marketing website design, business plans,

23     and other services to persons interested in operating a

24     business from their home.  The persons we called had in most

25     cases previously bought similar services from other

I826ketp

telemarketing companies.

To induce customers to buy our services, we led them to believe that once their new businesses were set up, they stood to generate substantial income with little effort on their part.  Although the sales pitch often included words like "there is the potential for this income," we also crossed the line and falsely told the customers that their businesses would in fact generate this income.

Your Honor, I knew what I was doing was wrong and unlawful.

THE COURT:  When you talk about 2014 and you refer to the time period in the indictment, were you doing this activity between 2013 and 2017, sir?

MR. BECKER:  Your Honor, may I have one moment to consult with Mr. Ketabchi?

THE COURT:  Yes.

(Pause)

THE DEFENDANT:  Your Honor, I don't remember the exact time frame; but I know it is not limited to 2014.  It expanded through other time frames as well.

THE COURT:  When you were talking to me, you referred to lists that you purchased -- sorry.  You did not refer to lists that you purchased.

You referred to the fact that the people you were calling had previously bought similar things; is that right?

I826ketp

| | |
|---|---|
| 1 | THE DEFENDANT:  Yes, your Honor. |
| 2 | THE COURT:  I take it you got those names from the |
| 3 | lists that you purchased from other telemarketers? |
| 4 | THE DEFENDANT:  The other companies had sold these |
| 5 | client's products and then they would send the leads what we |
| 6 | call in the industry onto us and then we would sell the clients |
| 7 | other services or something similar as well. |
| 8 | THE COURT:  You gave money in exchange for those |
| 9 | leads; right? |
| 10 | THE DEFENDANT:  Yes.  Not direct money.  It was called |
| 11 | a rev share, revenue sharing.  So if I sold the client, for |
| 12 | example, $10,000, they would get a percentage, 20 percent, |
| 13 | 30 percent whatever they -- |
| 14 | THE COURT:  In other words, they would share in the |
| 15 | revenue that you obtained from sales? |
| 16 | THE DEFENDANT:  Yes, sir. |
| 17 | THE COURT:  Is it correct that you targeted elderly |
| 18 | people? |
| 19 | THE DEFENDANT:  No, your Honor. |
| 20 | THE COURT:  Was there a significant percentage of |
| 21 | elderly people in the sales that you made? |
| 22 | Mr. Becker, if you want to talk to your client, you |
| 23 | certainly have the right to do so. |
| 24 | Talk to him. |
| 25 | MR. BECKER:  Thank you. |

I826ketp

THE DEFENDANT:  Your Honor, we didn't know the age of the people and the ages spanned.  I have spoken to people who were 21 years old, 40 years old, 50 years old.  It was a range. Where there some elderly people, absolutely.

THE COURT:  You are telling me you did not target in any way elderly people?

THE DEFENDANT:  No, not at all.  That wasn't -- that wasn't the business of our industry.

THE COURT:  There was no potential for income; isn't that correct?

THE DEFENDANT:  Sorry?

THE COURT:  In the businesses that you said you were going to set up, there was no potential for income?

THE DEFENDANT:  No, they didn't make any money.

THE COURT:  They never could make any money.  The businesses were not set up; is that correct?

THE DEFENDANT:  We set up their businesses, sure. Everything I sold we had a third-party, which is actually a gentleman on the indictment as well.

THE COURT:  Mr. Becker is saying don't talk about other people.

MR. BECKER:  No, I am saying he is not on the indictment.

THE DEFENDANT:  So the third-party company would fulfill every single item we sold.

I826ketp

1          THE COURT:  The fulfillment center?

2          THE DEFENDANT:  Fulfillment center.

3          THE COURT:  Go ahead.

4          THE DEFENDANT:  If you spoke to any of the clients,

5   every client that was sold an LLC got a tax ID number.  If they

6   were sold a business plan, they were sold a business plan.  I

7   have documentation and proof of everything I sold.

8          MR. BECKER:  Your Honor, may a -- because the Court's

9   questions are very probative and if I could share my

10  understanding, which is not inconsistent --

11         THE COURT:  Let me finish and then you can say

12  anything you want.

13         MR. BECKER:  Sure.

14         THE COURT:  Are you aware of any income that was

15  earned by any of the clients you signed up?

16         THE DEFENDANT:  When you are selling product called

17  Young Living, they did receive some checks from Young Living.

18  It was -- I don't know how to explain what kind of program it

19  was.  It was a marketing program where if they would sign up

20  somebody under them, so on and so forth, they would receive

21  income.  So we would set them up with a program that was a

22  marketing program and there were some people that did receive

23  actual small checks.

24         THE COURT:  Do you have any sense of the percentage of

25  the people who were victims of your fraud who received small

I826ketp

1    checks?

2              THE DEFENDANT:  I don't remember exactly, but that

3    was -- that happened at Olive Branch Marketing on

4    Mr. Sinclair's floor.

5              THE COURT:  Could you estimate it as less than

6    5 percent of the target of the victims of the fraud?

7              THE DEFENDANT:  I don't remember exactly, your Honor.

8              THE COURT:  Was it less than 10 percent?

9              Again, if you know.  If you have a range.

10             THE DEFENDANT:  I don't remember.  I don't know.

11             THE COURT:  If people wanted their money back from

12   your program, what you were telling your people was to try to

13   avoid giving them their money back; is that correct?

14             MR. BECKER:  Your Honor, forgive me for jumping in --

15             THE COURT:  I am trying to understand the contours of

16   the fraud.

17             MR. BECKER:  Okay.  Let me share this with you and

18   then if the Court has additional questions, we'll answer them.

19             My understanding is that customers who previously

20   purchased similar products and whose names were included on the

21   lead lists that these companies purchased were called up and

22   the sales pitch essentially -- this is not in every case --

23   was:  Have you ever thought operating a business out of your

24   home?  It can be very lucrative.  We can set up an LLC for you.

25   We can design a website.  We can give you a business plan and

I826ketp

then you can market whatever products you want to market.  For

example, if you like dogs, you want to sell dog food, you can

do that.

          There is no question, and that is why Mr. Ketabchi is

pleading guilty here today, that in inducing the customers to

part with their money, fraud was committed because

representations that were false were made about of the income

that would be generated.  In terms of other representations

that were made that were false, the Court may recall an earlier

proceeding I implored the Court to understand that the

indictment did not contain a very complete list of what the

false allegations were.  And had this case gone forward, I

would have sought a bill of particulars.  But there is no

question what Mr. Ketabchi told you when he read the allocution

that they crossed the line and made false statements about it.

          There is also no question, your Honor -- I think I

asked the question you asked of Mr. Ketabchi -- there was

certainly the potential to make money.  You had an LLC.  You

could market products.  There is no question the customers were

misled.  It was a large-scale fraud.  Mr. Ketabchi fully

accepts responsibility for his role in it.

          In a way, I am glad the Court asked the question it

asked, because it is important to understand exactly what the

fraud was and what it wasn't.

          THE COURT:  That's what I am trying to get at.

I826ketp

1         MR. BECKER:  So, for example, someone -- the sales

2     pitch is we'll set up an LLC for you and it will cost you X

3     amount of money.  The customer, as I understand it, paid that

4     amount of money and an LLC was in fact set up.  The customer in

5     fact got a business plan and a website.

6         Now, it may have been, and I don't dispute this, and

7     believe the government's position is it was a generic website,

8     that they were essentially all the same or incredibly

9     rudimentary and it was really kind of a farce.  I believe that

10    would be the government's position.

11        I think part of the fraud was, and Mr. Ketabchi

12    alluded to this or actually referred to it, that customers were

13    misled into believing that once this stuff was in place, they

14    could sit back and put their legs up on the coffee table and

15    the money would start rolling in.  Businesses just don't work

16    that way.  That was the fraud, I suppose.  Although, the

17    government I don't think has expressly said that.

18        So that is my understanding of where the fraud was.

19    My understand is that you are going to get a website, you are

20    going to get an LLC, and it was implicit that you are going to

21    make a lot of money or else why do this.  In fact, as

22    Mr. Ketabchi allocuted, they expressly did cross the line and

23    tell customers that.  That was false and that is what made this

24    telemarketing scheme different from, I suppose, so many others

25    where they couch their words more carefully and therefore not

I826ketp

1    subject to criminal prosecution.

2            THE COURT:  My last question went to a different

3    aspect of this, that is, whether or not they made efforts to

4    prevent people from obtaining their money back when they wanted

5    their money back.

6            MR. BECKER:  I would respectfully ask that the Court

7    permit Mr. Ketabchi to not answer that at this point.

8            THE COURT:  That's fine.

9            MR. BECKER:  Only because it is not something that I

10   feel I have discussed with him sufficiently in this context,

11   and it can certainly be addressed I suppose at sentencing.

12           THE COURT:  That's fine.  Let's let it go at that,

13   Mr. Ketabchi.  Thank you.

14           Before I started asking you some questions, you were

15   reading from a document.  That is perfectly permissible and I

16   would assume it is perfectly permissible and maybe even

17   visible, I don't know, that Mr. Becker assisted you with that.

18   All of that is fine.  What I do need you to tell me is that

19   everything you read is in fact true?

20           THE DEFENDANT:  Yes, your Honor.

21           THE COURT:  I think you told me this, but I just want

22   to ask and make sure it is on the record that when you did

23   these acts that you told me about, you knew what you were doing

24   was wrong and illegal; is that right?

25           THE DEFENDANT:  Yes, your Honor.

I826ketp

1        THE COURT:  Mr. Sobelman, what evidence does the

2   government have against Mr. Ketabchi?

3        MR. SOBELMAN:  Your Honor, if the case were to proceed

4   to trial, the government's evidence would include, among other

5   things, cooperator testimony including individuals that

6   participated in the fraud of Mr. Ketabchi, including victim

7   testimony, including individuals that Mr. Ketabchi personally

8   defrauded by telephone calls with them.  It would include email

9   correspondence between Mr. Ketabchi and his coconspirators.  It

10   would include communications from electronic devices seized

11   from Mr. Ketabchi and others.  It would also include financial

12   records showing victim money flowing to Mr. Ketabchi's himself

13   and also the corporate entities that he established and others

14   established in furtherance of the fraud.

15        THE COURT:  Thank you.

16        Mr. Ketabchi, how do you now plead to the charge in

17   Count One of this indictment, guilty or not guilty?

18        THE DEFENDANT:  Guilty, your Honor.

19        THE COURT:  Are you pleading guilty because you are

20   guilty, sir?

21        THE DEFENDANT:  Yes, your Honor.

22        THE COURT:  Are you pleading guilty voluntarily and of

23   your own free will?

24        THE DEFENDANT:  Yes, your Honor.

25        THE COURT:  Because you acknowledge you're guilty as

I826ketp

1   charged, because I find you know your rights and are waiving

2   them knowingly and voluntarily, because I find your plea is

3   entered knowingly and voluntarily and supported by an

4   independent basis in fact containing each of the essential

5   elements of the offense, I accept your guilty plea to Count

6   One, sir, and I determine you to be guilty of that count.

7           I am going to set the date for sentencing as

8   November 8th of the at 2:30 p.m.

9           I take it, government, there is no motion in regard to

10  bail?

11          MR. SOBELMAN:  That's correct.

12          THE COURT:  Mr. Ketabchi, I am going to continue you

13  on bail on the same conditions that you have been released on

14  previously.  In other words, you have to follow all of the

15  conditions of your release.

16          Do you understand that?

17          THE DEFENDANT:  Yes, your Honor.

18          THE COURT:  I will see you on November 8th or any

19  adjourned date.

20          MR. BECKER:  Your Honor, thank you.  While I am here,

21  would the following week be available for the Court,

22  November 8th?  I have something that I believe is going to

23  require my presence out of town.  I can change it if need be

24  but if the Court --

25          THE COURT:  Of course.  Let's take a look.

I826ketp

```
1              November 15th.  I have a trial at that time so we'll
2    make it 4:30 p.m.
3              MR. BECKER:  Thank you, your Honor.
4              THE COURT:  November 15 at 4:30 p.m.
5              Anything else, government?
6              MR. SOBELMAN:  No, your Honor.
7              THE COURT:  Defense?
8              MR. BECKER:  No, your Honor.
9              THE COURT:  Thank you all.
10                              o0o
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```